Mr. Justice BRADLEY,
with whom concurred Justices SWAYNE, DAVIS, and HUNT, dissenting:
I dissent from the judgment of the court in this case. In my view the case was decided and settled more than fifty years ago. The claim cannot be established without opening that settlement, and declaring that a valid contract w'as made which had been decided not to be a valid contract, but only a mere claim for some equitable allowance which was in fact made and accepted at that time.
*511 Piatt, the original claimant, was an army contractor in the Northwest during the war of 1812. Becoming embarrassed by not receiving funds from the government, and from the great rise in the prices of provisions, he threatened to throw up his contract; but, the allegation is, that at the request of Mr. Monroe, then acting Secretary of War, and upon his assurances that he should not be the loser, he went on, and furnished supplies to a large amount. For these supplies he claimed a large allowance beyond the amount stipulated in his contract. The petition, after alleging that the officers of the treasury, feeling themselves bound only by what appeared of record in the department, allowed to Piatt, in the settlement of his account for rations furnished after the first day of January, 1815, no more than the original contract price per ration, states further that Piatt then brought his claim before the Secretary of War, Mr. Crawford, who would have settled it on the principles for which Piatt then contended, “ but that, by reason of what he considered countervailing evidence, he had doubts whether such assurances had ever been given.”
Thus it is seen that there were two sides to the question at that early day, when all the events were fresh, and when Mr. Monroe was living at the seat of government, and accessible at any moment.
In 1820, Piatt was arrested for $48,280.77, the balance found due to the government in his accounts, as ascertained by the settlement at the department.' He then brought his claim before Congress, and the Judiciary Committee of the Senate reported adversely thereto. But on the 8th of May an act was passed for his relief.*
Thereupon his accounts were restated under the provisions of the act; and the officers of the department, after allowing him the sum of $63,620.48 for provisions furnished to friendly Indians and to distressed settlers of Michigan (which was entirely outside of his contract, and was after-wards paid in full), allowed him a credit on the footing of *512 the assurances of Mr. Monroe for $48,230.77, the full amount of the claim for which he had been arrested. He was thereupon discharged from custody on the 25th of July, 1820, and died in February, 1822. The present claim is prosecuted by his representatives.
Upon these facts it seems difficult to resist the conviction that, in the contemplation of both parties (Piatt and the government), this ease was then and there forever ended and determined. Between individuals it must necessarily have been so. Had such a disputed and doubtful claim been held by one man against another, and left to arbitration, subject to the condition that no sum should be awarded beyond a certain amount, and had that amount been awarded and accepted, can there be a doubt that the award would have been binding and conclusive? I think not.
The present case is stronger. Congress proposed to allow Piatt a settlement of his claim by the Treasury Department, in which due weight and consideration should be given to the assurances in question, provided that the sum allowed under' them should not exceed the amount claimed by the United States against him, and for which suit had been commenced. He accepted the law, had the benefit of the settlement, and was allowed under the assurances the amount named, which justly cancelled the debt for which he was sued and arrested by the government. Thereupon he was discharged. The declaration of Congress thus made binding by the acts of the party that nothing should be allowed against the government on that claim beyond a certain amount named, was equivalent to a solemn adjudication. It amounted to a declaration of the government that it would not suffer itself to be pursued or molested for a greater sum. Cau it now be contended that the act of 1855 constituting the Court of Claims, and allowing suits to be brought against the government on contracts made with it, has opened this adjudication — this settlement and determination of the case? In my judgment, certainly not. The act constituting the Court of Claims was not intended to disturb past adjudicar *513 tions and settlements, and to open afresh claims that had been disposed of. The Court of Claims had no right to go behind the final settlement, and attempt to establish the original facts of the case. Its findings of fact, in this respect, were illegal and void. The government has never consented to be sued on this claim, or on any claims similarly situated.
The conclusion of law to which the court came, I think, was correct, and the decree should be affirmed.

 See it set out, supra, p. 499. — Rep.